Brinkerhoff, C.J.
On the 27th day of September 1854, Elliott, plaintiff below, brought his suit under the code of civil procedure, in the common pleas of Licking county, against Stone, defendant below, on a note of hand made by Stone to John A. Grove, or order, for two hundred and fifty dollars, payable three years from date, and dated January 22d, 1851, alleging, in his petition, that the same was endorsed by Grove, the payee, in blank, “ and put in circulation, and thereupon by due course of delivery and transfer, came into the hands of plaintiff (below), before it matured,” and that he then was’ the absolute owner and holder thereof.
Stone, the defendant below, answered, setting up three separate defenses, under the second of which no question is here made. The first and third defenses aver, in substance, that after the execution of the note and its endorsement by the payee, it was sold and delivered to one A. J. Smith, and that, afterward, on the 26th day of December 1851, said Smith then being the owner and holder thereof, a bill in chancery *253 was filed in said court of common pleas, by certain judgment creditors of said Smith, to subject the amount to become due upon said note to the payment of their judgment. That such proceedings were had in said case in chancery, that at the August term of said common pleas court, 1852, a decree was rendered against Stone, the maker of the note, requiring him to pay the amount of said note, when the same should become due, upon the judgment against said Smith ; that these proceedings in chancery were had before any bona fide transfer or delivery of said note, in the usual course of business, was made to the plaintiff below, if any such ever was made, which was denied; that Elliott, plaintiff below, held said note subject to the decree aforesaid, and of all the equities of Stone, defendant below, of which he, Elliott, had constructive, if not actual notice by the pendency of said bill in chancery, and a fortiori the said decree; and that the circumstances under which Elliott took the note, were such as ought to have excited the suspicions of a prudent man.
As the code of civil procedure stood at the time the answer was filed, all allegations of new matter contained in it were deemed controverted without a reply, and none was filed.
The case was tried to a jury, who, under the instructions of the court, returned a verdict for the plaintiff below, for the amount appearing to be due upon the note; and a motion for a new trial having been made and overruled, judgment was rendered upon the verdict.
At the trial, a bill of exceptions was taken, embodying the evidence given in the case, and from which the following state of facts is fairly apparent:
On the 24th day of December, 1851, a bill in chancery was filed by one David Lewis and Mahlon Conard in the common pleas of Licking county, against the defendant below, and Alpheus J. Smith, to subject the amount to become due upon said note in the hands of said Smith to the payment of a judgment in favor of Lewis and Conard against said Smith: and that process in said case was returned “served” upon said Smith on the 25th day of December, 1851; that at the August term, 1852, of said court, a decree was entered there *254 in against said Smith and the defendant below, finding that said Smith was the owner and holder of said note, and directing the defendant below to pay the amount of said note, when due, to the clerk of said court, to be applied on said judgment, or that, in default of such payment, execution issue therefor. Elliot, the plaintiff below, was not a party to this case in chancery, but the same remains unreversed and in full force. And it does not appear, either in the pleadings or proof, that the defendant below has ever paid anything under said decree, or that execution has ever issued thereon.
It further appears, that on or about the 10th day of Janu ary, 1852, some fifteen days subsequent to the service of process in the chancery suit upon Smith, the plaintiff below, received, through the postoffice at Newark, the seat of justice of said Licking county, and near which he, the plaintiff below, resided, a letter from said Smith, inclosing the note in question, and which letter was as follows:
“ Somerset, December 29, 1851.
“ Mr. John Elliott :
“ I inclose you a note on Thomas Stone for two hundred .and fifty dollars, on your deposit with me. I am sorry I can not secure the balance, but can not at present.
“ Truly, A. J. Smith.”
That said Smith had been engaged in the business of banking in Newark aforesaid, until the preceding November, when he became hopelessly insolvent, closed his banking house, and absconded in debt to the plaintiff below some five or six hundred dollars on a deposit account.
That plaintiff below had no communication with said Smith, by letter or otherwise, between the absconding of Smith and the receipt of said letter, nor did he acknowledge or reply to it in any way afterward; but he burned the letter, kept a copy, and credited Smith with the amount of the note on Ms deposit account in his passbook. It further appeared that no settlement of said deposit account has ever been made between plaintiff below and said Smith; and that the plaintiff *255 below had no actual notice or knowledge of the pendency of said chancery suit until after he received the note in question, and credited it to Smith, as aforesaid.
The evidence showing the above state of facts having been closed, the defendant below asked the court to charge the jury—
“ 1. That the pendency of said suit in chancery in relation tc said note, under the chancery act of March 14, 1831, created a lien thereon in the hands of said Smith, and that said defendant Stone was liable to the amount thereof upon said decree.
“ 2. That the pendency of said suit was notice to the said Elliott (as well as other persons within the jurisdiction of the court where the same was pending), of the subject matter of said suit, and that the pendency of the suit commenced from the service of process, after the bill was filed; and that any transfer of said note by said Smith, after the pendency of said suit, was illegal and fraudulent, and therefore void.
“ 3. That if the note in question was not taken by Elliott upon some consideration parted with by him on the credit thereof, or in payment of Smith’s indebtedness to him jiy express agreement, and absolutely made (but as a mere pledge or collateral security, or as a conditional payment), then he holds it subject to said decree, and can not recover in this case.
“ 4. That the mere receipt or acceptance of said note, without any previous or subsequent special agreement between the debtor and creditor, makes it at the most, but a collateral security, and had no effect whatever on the legal rights of said Elliott, and the liabilities of said Smith on the original debt, either to impair or suspend the right of action thereon, and said note is therefore subject to the lien of said decree, and the equities of the parties thereto.
“ All which instructions the court refused to give, in the precise terms asked. But the court did instruct the jury among other things, thg,t if they were satisfied from the evidence that the note was negotiated to the plaintiff before due, for a valuable consideration, in good faith on his part, in the *256 usual course of business, without any notice or knowledge in fact, of the pendency of said proceeding in chancery, then the pendency of the suit would not bar him of a recovery upon the note; and that, whether the defendant remained liable also upon the decree or not. The court further instructed the jury, that if Smith was the debtor of the plaintiff, and delivered the note in question to the plaintiff, as and for a payment of said indebtedness, and it was so received and applied-by the plaintiff, he would be a holder for a valuable consideration, and the circumstance that the note was delivered by letter was of no importance, except as it might bear upon the question of integrity or good faith of the transaction. But if he received it as a mere pledge, a conditional payment, he would hold it subject to the equity set up by the defendant. The court further instructed the jury that the form of the transaction was not material. It would be sufficient, on the-question of valuable consideration, if the proof showed, satisfactorily, that the note was delivered and received, and applied in good faith in payment of a pre-existing debt, and that it was a question of fact for the jury to determine upon the evidence whether the note was given and received and applied in payment, or on a pledge as collateral security merely. If it was a payment, it would extinguish the plaintiff’s right of action on the claim or debt upon which it was paid, to the extent of the payment.
“ And thereupon the defendant excepted to so much of the charge of the court, as does not accord with the instructions asked.”
To reverse the judgment of the court of common pleas, a petition in error was filed in the district court of Licking-county, assigning for error, among other things not deemed worthy of special notice, that the court of common pleas erred in the instructions given to the jury, and also in refusing to give the instructions asked. And this petition in error was reserved for decision in this court.
The sixteenth section of the act of March 14, 1831, “ directing the mode of proceeding in chancery,” (3 Chase’s Stat 1697), provided that—
*257 “ In all cases where judgments at law . . . have been obtained and rendered against any person, and the debtor has not personal or real estate subject to levy on execution sufficient to satisfy said judgment, . . . but has any equitable interest in real estate ... or any money, contracts, debts, or choses in action, due to him or which may become due, . . . . the same may be subjected in chancery to the payment of said judgment. . . . And the said courts shall decree sales, and enforce all necessary transfers, to vest in any person taking under such decree all the right, title and interest of the said debtor in the subject of the decree at the time of the service of the process in such case.” . . .
The suit in chancery referred to in the pleadings and bill of exceptions, was doubtless prosecuted under this section of the statute ; and it will be seen that the principal question in this case is, whether the provisions of this section apply to negotiable commercial paper, before due, in the hands of a bona fide holder, and received by him in the regular course of business and for value, without actual notice of the proceeding by which it is attempted to be subjected to the payment of the debts of his mediate or immediate assignor.
Inasmuch as the provisions of the sixteenth section of the act of 14th March, 1831, are substantially re-enacted and continued in force by section 458 of the code, this question is one of nc little practical importance, and, so far as we know, has never been authoritatively decided in this State. In the other States of the union, the decisions are not entirely uniform. In the case of Somerville v. Brown, 5 Grill, 399, decided by the court of appeals of Maryland, in 1847, Dorsey J. dissenting, it was under a similar statute, held, that where the maker of a negotiable note, is, before its maturity, summoned as the garnishee of one who owns the note as an indorsee, and judgment is rendered against him, the judgment will protect him against an action on the note, brought by a subsequent indorsee, who acquired title to the paper before its maturity and without any knowledge of the attachment.
But the general current of authority, and, as it seems to us, the weightier considerations of public policy, are the other *258 way. See Drake on attachment, sec. 577, et seq.; Keiffer v. Elder, 18 Penn. St. R. (6 Harris), 388, and Winston v. Westfeldt, 22 Ala. R. 760, where the cases are collected and the whole subject is very fully and ably reviewed. The question has generally arisen under statutes relating to proceedings in attachment against garnishees ; but the form of the proceeding can not affect the principles involved.
It is argued by counsel for plaintiff in error, that the provisions of the sixteenth section of the act “ directing the mode of proceeding in chancery,” are comprehensive and unlimited in their terms, embracing “.any debts, or choses in action due” to the debtor, “ or which may become due,” and subjecting “ all the right, title, and interest- of the said debtor in the subject of the decree at the time of the service of the process; ” and hence, and inasmuch as the sixteenth section above referred to, is of later date than an act “ making certain instruments of writing negotiable,” by which the general law merchant in relation to negotiable paper is incorporated into the law of Ohio, it is argued that the former must be held to repeal, by implication, so much of the latter as imparts inviolability to negotiable paper, before due, in the hands of a bona fide holder for value. But repeals by implication are not favored, and will he held to exist only when no reasonable construction can avoid them. And we think a correct and satisfactory answer to this argument is found in the language of Lowrie, J., in Kieffer v. Ehler. He says, “ care is to be taken that laws of general, shall not be regarded as of universal application; and this -caution is required in relation to the law for attaching debts in execution, and declaring that 'all debts’ so attached, shall remain in the hands of the garnishees to answer the debt. , In acts of assembly, as well as in common parlance, the word ‘ all ’ is a general, rather than a universal term, and is to be understood in one sense or the other, according to the demands of sound reason. It is certainly broad enough to include debts' due by bills of exchange and promissory notes ; and there is nothing in their nature that excludes them from’its operation. But they have a legal quality that - renders the hold of an atta-chmént upon them very *259 uncertain. Unlike all other property, they carry their whole evidence of title on their face ; and the law assumes the right of him who obtains them for valuable consideration, by regular indorsement, and without actual notice of any adverse claim, or of such suspicious circumstances as should lead to inquiry. To hold that an attachment prevents a subsequent bona fide indorsee for value, from acquiring a good title, would be almost a destruction of one of the essential characteristics of negotiable paper. Moreover, it would present the strange result, that the more hands such paper had passed through, and the more indorsers there were on it, the less it would be worth in the money market; for it would be subject to thé more risks of attachment. Under such views it has always been held, that an attachment is unavailable against a bona fide holder for value, of negotiable paper, who obtained it after attachment, before maturity, and without notice.” And he adds, “ The doctrine of implied notice by lis pendens is totally inapplicable to such cases.” He still further adds, “ Certainly the negotiation of such paper by a defendant after he has had notice of the attachment, is a fraud upon the law ; and we think the court from which the attachment issues, has power to prevent this, by requiring the instrument to be placed in such custody as will prevent it from being misapplied ; taking care that it shall be demanded at maturity, and that proper notice be given to indorsers if necessary; and that the money, if paid, shall stand in place of the note or bill to abide the event.”
• The doctrine of constructive notice by Us pendens, above alluded to and denied by Lowrie, J., is strongly insisted on in this case, in argument, by counsel for plaintiff in error.
In Powell on Mortgages, vol 2, 618, it is said, that “ there is no case in which equity has determined the property in goods to be affected by reason of a Us pendens, where possession is the principal evidence of ownership, as of personal chattels.” And Chancellor Kent, in Murray v. Lylburn, 2 J. C. R. 444, while he expresses a doubt as to whether the exception from the operation of the rule of Us pendens will extend so far as to embrace ordinary chattels, expresses the *260 opinion that “ the safety of commercial dealing would require the limitation of the rule,” so far as not to extend to commercial paper not due. The case of Winston v. Westfeldt, before cited, is a case directly in point in this case, and the supreme court of Alabama there held, that “ an indorsee who acquires a negotiable note before maturity, bona fide, and for valuable consideration, without notice, is not bound by a decree in a chancery suit to which his indorsee was a party, although he acquired the note after the rendition of the decree.” And that “ the doctrine of lis pendens does not apply to negotiable paper.” We are of the same opinion. The doctrine of lis pendens is founded on no principle of natural equity, but has its foundation solely in considerations of public policy ; and the policy which excepts negotiable paper from its operation, is, at least, as wise, as important, and as w.ell established as is that on which the rule itself has its foundation.
But, it is said, the defendant below is bound by a decree in chancery, to pay the amount of the note in question to one party, while, by the judgment here sought to be reversed, he is bound to pay it to another, and may thus be compelled to pay it twice. That such should be the case is certainly wrong in itself, and much to be regretted. Whether, in the course of the chancery suit, he took proper steps to disclose and set up in defense the fact, that the note in question was negotiable and not due, and as liable to fall into the hands of a bona fide holder for value, we are not advised by this record. If he did not, either he or his counsel were guilty of a lamentable oversight. If he did, the decree was clearly erroneous, and ought to have been reversed. In such case the court ought, if possible, to compel the production of the negotiable paper, and to exercise the precautions suggested by Lowrie, J., in Kieffer v. Ehler; and if not possible, to suspend a decree in the premises until the maturity of the paper, and until the possible rights of third parties could be ascertained ; unless the complainant could offer guaranties which the party standing in the relation of garnishee would be willing to ac cept.
Whether it is now too late for the plaintiff in error to re *261 verse the decree in chancery, and if so whether he may have a remedy by an independent proceeding, are questions which are not now before us, and the conditions of which we can not know.
On the questions made as to the bona fides of the plaintiff below, and as to the actual application of the note in payment:, pro tantOj of his deposit account, the jury must have found in favor of the plaintiff below, and which, we think, they were, on the evidence, authorized to do.
We see no error in the record and proceedings of the court of common pleas, and the judgment is therefore affirmed.
Scott, Suture, Peck and Gholson, JJ., concurred.